NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.* R. D. WHITE, ADMR. OF W. B. WHITE.

NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.* ELIZABETH WHITE, BY NEXT FRIEND, R. D. WHITE.

NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.* LIZZIE J. WHITE.

NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY *v.* R. D. WHITE.

Consolidated Causes*

(*Nashville.* December Term, 1927.)

Opinion filed, March 31, 1928.

410

*Affirmed by the Supreme Court of the United States, Feb. 18, 1929. Reported in 278 U. S., page 456, Cases 135 & 169.

MILLSAPS FITZHUGH and G. T. FITZHUGH, for plaintiff in error.

JULIAN WILSON, W. P. ARMSTRONG, ELIAS GATES and WM. M. COLMER, for defendant in error.

MR. JUSTICE COOK delivered the opinion of the Court.

These causes were heard together in the trial court and come here in one record. We designate the parties as in the trial Court.

The Ford touring car occupied by plaintiffs and driven by W. B. White was struck by defendants train on the on the Poplar Street crossing in Memphis on the night of December 1, 1925. W. B. White was killed and the

other occupants of the car injured. Actions were commenced and in each case a declaration of two counts was filed charging for cause of action: (1) common-law negligence; (2) failure to observe the precautions required by Subsections 2 and 3, Section 1574 of Shannon's Code.

The jury found for R. D. White, Administrator of W. B. White, and for R. D. White individually under the first counts of their declaration and against them upon the second; and for the other plaintiffs upon both counts. The trial Judge approved the several verdicts and upon appeal errors are assigned by the defendants. Some of the assignments of error present questions common to all the cases, and these will be disposed of at the outset.

One act of negligence, in connection with others, charged in the first count of the several declarations was the failure of the defendant to have a flagman stationed at the crossing to warn persons traveling the highway of approaching trains as required by an ordinance of the City of Memphis. This ordinance reads as follows:

"All railroads whose trains of cars are driven by steam engines, within the limits of this City, shall provide flagmen for each street such trains may cross; these flagmen shall be kept constantly on duty at each street, when such train crosses, and until the engine has crossed such street, waving a flag in daytime, and a red lighted lamp at night to give warning to all of the approaching train."

Defendants met this charge of negligence by a special plea averring that it erected and maintained at the Poplar street crossing an electric signal device to warn persons using the street of the approach of trains, and that such device was a better and more efficient means of protection against accidents at the crossing than a watchman with a flag or lantern as required by the ordinance;

and that the ordinance requiring the watchman was void in contravention of the laws of the State and of the Commerce Clause of the Federal Constitution and the Fourteenth Amendment.

In support of this special plea evidence was offered and the trial judge admitted testimony that the electric signal maintained at the crossing was designed according to the latest standard of the art, and was kept in perfect condition. He also admitted evidence to show its utility and service for the purpose designed, and along with this evidence to show what a watchman with a flag or lantern was required to do or could do to warn travelers, and also the relative cost of the two modes of guarding travelers on the street against danger from contact with trains on the crossing. Witnesses were then called to testify from their experience and observation that the electric signal maintained at the crossing was the best known means of protecting travelers on highways from collisions with trains on road crossings, and was superior to a flagman as a safeguard against accident.

(1) The ordinance having been challenged as obsolete and unreasonable under changed conditions, evidence showing its relation to the public safety at street crossings was admissible, and such evidence was received by the trial judge. After presenting those facts defendant could not go further and substitute the conclusion of the witnesses upon the subject of inquiry for the conclusion of the court. The inference to be drawn from a consideration of the two modes of warning travelers of approaching trains, was a judicial function, and the witnesses could not be called to intrude their conclusions into the province of the Court or jury. (*Bruce* v. *Beal*, 99 Tenn.,

303; *Cumberland Telephone Co.* v. *Peacher Mill Co.*, 129 Tenn., 374), by declaring the electric signal a more efficient means of preventing accidents at grade crossings than the watchman, which the ordinance required to be° on guard when trains were approaching.

*(2)* Whether the ordinance was a reasonable police measure as applied to crossings, or whether reasonable administration called for its application to the particular crossing, were questions for the Court to determine from the face of the ordinance itself, and from applicable facts and circumstances. *People* v. *Detroit United Railway,* 63 L. R. A., 746.

*(3)* The City was given power by the Legislature to make the regulation, and it could not be annulled by the Courts unless plainly unreasonable, or unless the situation and circumstances arising from lapse of time and changed conditions render it obsolete and unreasonable. In determining the reasonableness of the ordinance and its application, every presumption favorable to its validity exists. 43 C. J., par. 323, page 310, 19 R. C. L., sec. 113, page 808.

*(4)* It must be presumed that the municipal authorities were familiar with the local situation, knew the conditions at grade crossings in the City of Memphis, and that the application of the ordinance at such crossings was necessary for the protection of life and property. Therefore, to authorize judicial annulment of the ordinance, or a setting aside of legislative discretion as to its use at the particular crossing, its unreasonableness, or want of necessity, as a police regulation, must be clear, manifest and undoubted. *Hines* v. *Partridge,* 144 Tenn., 231.

As said in *Hartman* v. *City of Chicago,* 282 Ill., 511, the Court will not hold an ordinance void as unreasonable

if there is room for a fair difference of opinion as to whether or not it is reasonable.

It appears that approaching the tracks of the N. C. & St. L. Railway from the West, Poplar street first crosses the Union Railway tracks, beyond these at 350 feet the Illinois Central railroad tracks, and then ascending a slight grade it reaches the main track and two side tracks of defendant railroad at 410 feet. Poplar street was an arterial highway and witnesses testify that throughout the day and until near midnight, cars pass at an average of one a minute over defendant's crossing. Instead of having a flagman at the crossing when trains approach to warn persons using the highway, defendant installed as a substitute the electric signal consisting of bells and red lights, elevated fifteen feet from the level of the street.

It is a reasonable assumption that the flagman required by the City ordinance would stand on or near the ground in a position where he could be easily seen, and if necessary confront persons about to heedlessly cross the railroad tracks in front of a near approaching train.

(5) The distinction between the two modes of warning against danger is made apparent by the proof, and the Court must concede to the legislative department of the city the right to express its judgment and discretion in providing the means of protection most conducive to public safety, especially since the evidence before us does not conclusively establish the fact that the ordinance is unreasonable.

If there is controversy that produces confusion or doubt as to whether or not an ordinance is reasonable, the doubt must be resolved in favor of the validity of the ordinance. The law-making body of the city was the

sole judge of the wisdom, expediency, or necessity for the ordinance. With the legislative department of the city lay the power to regulate, not with the Courts, and the power of the Court is strictly limited to the determination of whether or not the regulation was unreasonable. 12 C. J., par. 443, page 933.

(6) The mere fact that it would cost the defendant more to have a watchman at the crossing when trains were approaching to warn persons on the highway, than to maintain the electric signal is not sufficient to render the ordinance void as a taking of property without due process, nor cause a burden upon or an interference with Interstate Commerce. *City of Ackworth* v. *W. & A. Railroad Co.*, 126 S. E., 455, cited by defendant to sustain its proposition that the ordinance is void because unreasonable, recognizes the rule that if the public safety required a flagman at the crossing the fact that more expense is imposed by that requirement than by the method relied on by defendants would not render the ordinance violative of the commerce and due process clauses of the Federal Constitution.

(7) The public safety is the paramount consideration, and police regulations to accomplish that end cannot be struck down by the Courts because the regulation entails expense. Both the commerce clause and the due process clause of the Federal Constitution give way to reasonable police regulations that accomplish the purpose of protecting human life and property. We think this principle is well sustained by the authorities, and as a dominant proposition runs through the opinion of *Erie Railroad Co.* v. *Public Utilities,* 254 U. S., 394.

In our unreported case of *L. & N. Railroad Co.* v. *Hoehn,* April 8, 1909, the Court held that the ordinance

as administered at an infrequently used crossing was unreasonable, but not so an ordinance requiring a flagman at a crossing constantly used by the public, and where trains passed at frequent intervals.

We are of opinion that the trial judge committed no error in the instruction that the ordinance was valid and its violation negligence *per se,* and if such negligence was the proximate cause of the collision, resulting in the injuries alleged, that the defendant would be liable.

Though resting upon facts arising from the same transaction, the plaintiffs occupied different situations calling for the exercise of differing degrees of care, and each of the cases is dependent upon its determinative facts.

The automobile in which plaintiffs were riding when the collision occurred, left the Grand Central Station a little before ten o'clock at night. The side curtains of the touring car were up and the only means of observation afforded those on the rear seat was by a view through the ising-glass set into the curtain. Mrs. White and her daughter, Elizabeth, were on the back seat. Their opportunity to see and observe was not equal to that of the occupants of the front seat.

Buildings along the North side of Poplar street obstructed the approach to the Poplar street crossing. Witnesses testify that at a point seventy-four feet West of the Poplar street crossing an opening between buildings and the coal cars afforded a view of defendant's tracks at and beyond the Scott avenue crossing. The Scott avenue crossing over defendant's tracks is 158 feet North of the Poplar street crossing. Immediately North of Scott avenue the defendant's tracks ran into a cut which a short distance farther North was from eight to twelve feet deep. A cut of box cars stood on the West siding

commencing near Scott avenue and obstruction the view from Poplar street of the mouth of the cut. Two coal cars were standing on the West side-track between Scott avenue and Poplar street and reached to within eight feet of the North side of Poplar street. According to the testimony of a number of witnesses, the only possible view afforded the occupants of an automobile approaching the Poplar street crossing from the West was the small opening between the buildings and coal cars about seventy-four feet West of the Poplar street crossing, at which point the occupants of a moving automobile could see as they passed the road bed at the Scott avenue crossing, and if cars were not standing on the West side-track between Scott avenue and the mouth of the cut a view was afforded beyond Scott avenue to the mouth of the cut. There is evidence that a view beyond Scott avenue was obstructed by the cut of box cars heretofore mentioned.

With the exception of the point last indicated, the occupants of the front seat could obtain no view of the main tracks of defendant's road, as it approached the Poplar street crossing until after the hood of the engine passed the protruding coal car that stood on the West siding North of the Poplar street crossing, and when the automobile had reached that point there is evidence to the effect that it was then within striking distance of the train. The Scott avenue crossing is 158 feet North of the Poplar street crossing. When the automobile had passed far enough around the end of the coal car next to Poplar street to enable those on the front seat to see down the track, the locomotive was on the Scott avenue crossing, and so a collision was inevitable.

Mrs. White and her daughter who sat on the rear seat were not in a position to observe the surrounding situation and to know exactly when they reached the crossing. While they owed the duty of exercising reasonable care there is evidence that they could not have seen the approaching train and could not have known of its approach until after the accident which defendant could have avoided by observance of the ordinance. They had a right under the circumstances to rely on the superior opportunity of the driver to look and listen, and his judgment and discretion in going upon the crossing. They are not chargeable with his contributory negligence. *Cotton* v. *Willmar & S. F. R. Co.*, 8 L. R. A. (N. S.), 643.

*(8)* Ordinarily the driver of an automobile is to be entrusted with looking out for the safety of the vehicle which he controls and other occupants of the automobile standing in the relation of guests, are not required to assert themselves until the danger is obvious or discoverable by ordinary care and observation. They may assume, until the danger becomes obvious, that the driver, if apparently exercising reasonable care in controlling the movement of the automobile, will continue to do so.

The negligence, if any, of W. B. White, who was driving and controlling the car, and apparently exercising ordinary care, could not be imputed to his wife and daughter who under the circumstances must be regarded as occupying the relation of guests. *Knoxville Ry. & Lt. Co.* v. *Vangilder,* 132 Tenn., 487; *Hurt* v. *Y. & M. V. R. Co.,* 140 Tenn., 623; *Tenn. Central R. Co.* v. *Van Hoy,* 143 Tenn., 340; *Dedman* v. *Dedman,* 291 S. W., 449.

When the automobile passed the point some seventy-four feet West of the Poplar street crossing which, according to some of the witnesses, afforded travelers on

the street, looking through the space between the buildings and cars on the North a view of the Scott avenue crossing, the defendant's train was beyond view in the cut North of Scott avenue, otherwise the train would have reached the Poplar street crossing before the arrival of the automobile. From that point until the automobile passed the end of the coal cars immediately North of the Poplar street crossing, the approaching train, according to material evidence in the record, could not have been seen.

These facts together with other material evidence which we have reviewed and considered, sustain the averments of the first count of the declaration that the failure of defendants to observe the ordinance by having a flagman at the crossing, coupled with the dangerous situation at this crossing, was the proximate cause of the accident. We find no reason to conclude from the evidence that Elizabeth White and Mrs. White failed to observe ordinary care for their safety, and the judgment upon the verdicts in their favor must be affirmed. *Tenn. Central R. Co.* v. *Van Hoy, supra.*

W. B. White and R. D. White occupied the front seat of the automobile. W. B. White was driving, and R. D. White testifies that he was on the lookout for trains at the crossing. They had an opportunity to see and understand that their view of the railroad track was obstructed toward the North, and that an approaching train could not be seen until it emerged from the mouth of the cut North of Poplar street. They knew also that the defendants did not keep a flagman at the crossing but had substituted the electric signal set upon a pole fifteen feet above the surface of the street, and knew that this signal stood on the East side of the railroad, West of Poplar

street. Evidence in the record shows that Poplar street looking East toward the crossing, was slightly up grade. This being true special care was required by one enveloped underneath the top of a Ford touring car to see the signal fifteen feet above the level of the ground.

According to the testimony of R. D. White it was impossible for one approaching the Poplar street crossing to ascertain whether a train was coming from the North without stopping at the crossing, passing around the end of the coal car, and looking into the mouth of the deep cut. He testifies that they looked at the electric signal and that it gave no warning; that they were driving about four miles an hour and listening; that they did not hear the electric signal bell ringing, nor the whistle of a locomotive or the sound of its bell. He testifies that observing these precautions they drove slowly and very cautiously upon the track. Their first view of the track after passing beyond the end of the coal car revealed the fast approaching train. He says they were then within striking distance of the locomotive and the only chance to avoid it striking them was to hurry across the track, and that his father speeded up the automobile and almost crossed in safety. Spectators testify that the locomotive struck the left rear wheel of the automobile.

(9) The jury found against these plaintiffs under the statutory count of the declaration, but for them under the common-law count. After reviewing the evidence we are unable to conclude that the negligence of R. D. White and W. B. White was the proximate cause of the collision, but cannot escape the conclusion that W. B. White, the driver of the car, and R. D. White who sat beside him on the front seat, were guilty of great, but remote contributory negligence under the circumstances, and for

that reason we consider the damages of $10,000 assessed in behalf of R. D. White, administrator, as excessive. This being so apparent from the record, unless the administrator consents to a *remittitur* reducing the recovery in that case to $2000 the judgment must be reversed and the cause remanded for a new trial. R. D. White had an equal opportunity with his father of knowing and understanding the situation that confronted them and all its glaring potentialities of danger, and he owed the duty of exercising care in warning his father and if necessary causing him to stop the car and to listen and to get into a position where they could look before passing within striking distance of the train. He, too, was guilty of contributory negligence, but it does not appear that the verdict of $250 in favor of R. D. White individually is excessive.

If the *remittitur* suggested is accepted by the defendant, R. D. White, administrator, the infirmity in that verdict will be cured and the judgments affirmed, for there is material evidence to sustain the conclusion that the proximate cause of the accident was defendant's failure to observe the municipal ordinance coupled with a situation making the Poplar street crossing dangerous to life on the public highway.

*(10)* It is insisted through assignments of error that the verdicts are inconsistent. As we have stated, the jurors were considering distinct cases, resting upon the same facts. . . . There is material evidence to sustain each verdict, and we must consider each case as if tried severally. The jury reported a general verdict in the case of Elizabeth White and Lizzie J. White, and in those cases supposing want of evidence to sustain the statutory count

of the declaration the verdict could be referred to the common-law count which is sustained by the evidence.

We find no prejudicial error in the charge of the trial Court. Though involved by the presentation of four cases, and by issues arising under a common-law and a statutory count of each declaration, the charge is unusually clear and comprehensive. It is fair to both parties. It covers every material request offered by defendants for additional instructions, and fairly presents the issues raised by the defense and applicable to the common-law count.

*(11)* The latter half of ordinance 670 bears no relation to the subject-matter of the first half, requiring that a flagman be stationed at crossings when trains are about to pass. The trial Judge committed no error in refusing to require plaintiff to introduce the inapplicable portion of the ordinance. Supposing, as defendant insists, the latter portion of the ordinance void as in conflict with the general laws, the first portion of it intended to protect life at street crossings is not void and invalidity of the latter portion of the ordinance would not render the whole nugatory, because its parts are plainly distinct and separable. 43 C. J., par. 854, page 574.