THE COMMUNITY TRACTION CO. *v.* KONTE.

362

(Decided December 23, 1929.)

*Messrs. Tracy, Chapman & Welles,* for plaintiff in error.

*Messrs. Meck & Meck,* for defendant in error.

RICHARDS, J.   John Konte was a passenger or guest in an automobile en route from Cleveland to Detroit, through Toledo, reaching the latter city about 12:10 o'clock in the morning of September 8, 1928.   The car in which he was riding was being operated by one Frank L. Fink.   On reaching Toledo they drove northerly on Broadway until they reached South street, where a collision occurred between their car and a bus proceeding westerly on South street, and operated by the Community Traction Company.   As a result of that collision the plaintiff was injured, and in the action recovered a verdict and judgment for $1,100.

There was maintained at the intersection where the collision occurred an automatic electric traffic signal for the purpose of stopping traffic when the red light showed and permitting traffic to proceed

when the green light appeared. The plaintiff alleged negligence in operating the bus, in violation of certain ordinances of the city, and at a claimed rate of speed of from 40 to 45 miles per hour, and across the intersection against the red light shown on the traffic signal.

The bill of exceptions shows much conflict in the evidence as to the rate of speed at which the bus was being operated, but there was very substantial evidence from passengers in the bus, corroborated by other testimony, that the green light showed on South street when the bus was about 200 feet east of the intersection, that the bus was then traveling at the rate of 35 to 40 miles an hour, and that it did not slacken its speed before it entered the intersection. If the jury found from the evidence that the driver of the bus was operating it at that rate of speed in an attempt to pass the intersection before the red light showed against him on South street, and that it did in fact appear shortly before the bus entered the intersection, when it was too late for the bus to be stopped, such a finding would not be contrary to the weight of the evidence.

On the trial of the case the traction company sought to introduce in evidence Section 3 of the Traffic Code of the city of Toledo defining the congested district and delineating the boundaries of such district. It is conceded that the district as thus bounded in the ordinance did not include the intersection of South street and Broadway. This section of the ordinance was excluded from evidence, and exception taken, and the court charged the jury that the intersection where the collision occurred was in a closely built-up portion of the city, and that a rate

of speed of more than 15 miles an hour at that place was *prima facie* evidence of a rate of speed greater than was reasonable and proper, unless it further appeared from the evidence that under the circumstances such speed was reasonable and proper. This action of the court is assigned as error.

The ordinance was not excluded because the defendant had failed to plead it, but manifestly because the classification of the territory where the collision occurred was in violation of Section 12603, General Code. That section was then as enacted in 110 Ohio Laws, 138, and provided that a rate of speed greater than 15 miles an hour in the business or closely built-up portions of a municipal corporation, or more than 25 miles an hour in other portions thereof, should be *prima facie* evidence of a rate of speed greater than was reasonable and proper. Section 40 of the ordinance was introduced in evidence, and provides that a speed greater than 15 miles per hour in the congested district, or greater than 25 miles per hour in other portions of the city, shall be presumptive evidence of a rate of speed greater than is reasonable and proper, and Section 3, which was excluded from evidence, defines the congested district to be the "business *and* closely built-up portions of the city," as in the section later described by metes and bounds. It will be noticed that the ordinance is in the conjunctive form and limits the congested district to that which is "the business *and* closely built-up portions," while the statute is in the disjunctive form and fixes the minimum rate of speed for the "business *or* closely built-up portions."

The character of the portion of the city where the

collision occurred is not in controversy. Two photographs introduced in evidence disclose that there are numerous places of business on the four corners of the intersection of Broadway and South street, among which are a bank, drug store, bakery, grocery, and automobile salesroom, an office and store of the Toledo Edison Company, and various other stores. The buildings are shown to be of substantial brick and two stories in height. Each street is paved with brick, and there is a double track electric line located in the center of each, and each street has wide stone or concrete sidewalks. Some twenty motor vehicles are shown on the streets near the intersection when the photographs were taken. The conditions shown by the photographs are supplemented by the testimony of a witness to the existence of stores, a bank, an Overland salesroom, and other buildings, that they are all store buildings at the intersection, that people lived upstairs over the stores, and that there was a nearby residential district. The conditions shown to exist by the photographs and the testimony of the witness are not contradicted in any manner and show that the intersection is in the business portion of the city and is also closely built up. The ordinance, however, classifies the territory as not in a business or closely built-up portion of the city.

Section 3 of Article XVIII of the Constitution of Ohio provides that municipalities may adopt such local police, sanitary, and other similar regulations, as are not in conflict with general laws. This section authorizes the adoption of reasonable traffic regulations not inconsistent with Section 12603, General Code. Provisions in such ordinances inconsis-

tent with said section are specifically prohibited by Section 12608, General Code, which enacts that the provisions of Section 12603, General Code, shall not be diminished, restricted, or prohibited by an ordinance, rule, or regulation of a municipality or other public authority. It is therefore not permissible for a municipality to authorize the maximum rate of speed in what is in fact a business or closely built-up portion of the city, the General Assembly having fixed by statute a lesser rate of speed for such portion. If a municipality were permitted to enact and enforce such an ordinance, it would likewise be justified in enacting an ordinance classifying the entire area of the city as being in the business or closely built-up portions of the city, or conversely, all of it as outlying territory, and thereby nullify the statutory speed limits. A municipal ordinance cannot, by its mere enactment, make black white, nor white black.

The General Assembly, in prohibiting the passage of ordinances conflicting with the provisions of Section 12603, doubtless had in mind the great and increasing long-distance travel by motor vehicles and the necessity of uniform speed regulations throughout the state. A municipal traffic ordinance which, in classifying the area of the city, fails to include a business portion of the city or a closely built-up portion with other like districts, but classifies it with outlying territory, as not a business portion, nor a closely built-up portion, and thereby permits a greater rate of speed than is allowed by statute, is just as much in conflict with the general laws of the state fixing the speed limit at a lesser rate as it

would be if it directly fixed a higher speed than allowed by statute.

The trial court committed no error in excluding Section 3 of the ordinance and instructing the jury as to the character of that portion of the city where the collision occurred, the facts being uncontroverted.

In contending for the admissibility of Section 3 of the ordinance, counsel for the traction company rely on *State* v. *O'Mara,* 105 Ohio St., 94, 136 N. E., 885, and *Hanna* v. *Stoll,* 112 Ohio St., 344, 147 N. E., 339. A cursory reading of those cases would seem to indicate that they are inconsistent with the position taken by the trial court, and with the law as indicated above, but it was not claimed in either of those cases that the classification made by the ordinance was in conflict with a state statute and not justified by the facts, and each case indicates that an ordinance, to be admissible, must not be in conflict with general laws. Limiting, as we must, the language used by the court in deciding those cases, to the particular facts involved in the cases, they are not in any sense inconsistent with the conclusion reached in this case as to the ordinance here involved, which classifies this territory as neither business nor closely built-up territory, when it is in fact both.

Since the decision of the Supreme Court on May 29, 1929, in *Schneiderman* v. *Sesanstein,* 121 Ohio St., 80, 167 N. E., 158, and since the decision on June 5, 1929, in *Eshner* v. *City of Lakewood,* 121 Ohio St., 106, 166 N. E., 904, no doubt can exist that the trial court was right in excluding Section 3 of the ordinance. We cite, also, *City of Youngstown* v. *Evans,* 121 Ohio St., 342, 168 N. E., 844; *C. Crane & Co.* v.

*Works,* 19 Ohio App., 349, and *F. D. Lawrence Electric Co.* v. *Enterprise Lumber Co.,* 28 Ohio App., 30, 162 N. E., 434.

It is further urged that the trial court erred in refusing to charge before argument instruction No. 1-a, which, if given, would have advised the jury that it was, as a matter of law, the duty of the plaintiff Konte, who was a mere passenger, to keep watch of traffic lights at the intersection of streets crossing the one upon which they were traveling. His duty was, of course, to exercise ordinary care, but it would be going too far to specify in instructions to the jury that the particular duty of watching traffic lights constituted a part of the ordinary care of a passenger. Although he was riding in the front seat beside the driver of the car and was required to exercise his faculties of sight and hearing, it was only his duty to exercise ordinary care, and what constituted such care was a question for the jury.

At the request of the plaintiff, two interrogatories were submitted to the jury, one of which reads as follows: "Did Frank Fink operate his automobile against a red traffic light at South Avenue and Broadway on September 8, 1928, at about 12:15 A. M.?" To this interrogatory nine members of the jury answered: "Do not know." It is argued that this answer is equivalent to a finding in the negative. We do not regard the interrogatory and its answer as a matter of very great importance in this action. Frank Fink was the driver of the car, and, even if the interrogatory had been answered in the affirmative, it would only amount to a finding that the driver of the car was guilty of negligence, and his negligence could not be imputed to the plaintiff, John Konte.

Another interrogatory submitted reads as follows: "Was the bus of The Community Traction Company violating Section 12603 of the General Code of Ohio relating to speed in a business or closely built-up portion of a municipality at the time of the collision?" This interrogatory was answered "Yes" by nine members of the jury. The interrogatory involves a combined question of fact and law and was not required to have been submitted to the jury, but its submission could not in any sense be prejudicial to the traction company.

We have considered all of the claimed errors on which reliance is placed, but find none to the prejudice of the plaintiff in error.

*Judgment affirmed.*

WILLIAMS, J., concurs.

LLOYD, J., dissenting. I cannot agree that "the character of the portion of the city where the collision occurred is not in controversy." This was one of the questions in issue, and the burden of proof was upon the plaintiff Konte to prove by a preponderance of the evidence, if he so claimed, that the place of collision was a business or closely built-up portion of the city of Toledo.

South avenue and Broadway are both main thoroughfares, because there appear to be street railway tracks on both of them, but that fact alone would be insufficient to designate the character of the location. The only evidence offered on this subject other than the two photographs was the testimony of the driver of the traction bus, elicited by Konte's counsel on cross-examination. The photographs were offered by counsel for Konte and by

stipulation were received in evidence without further proof. Both of them were taken on September 15, 1928, but whether or not at the same time does not appear. One of these photographs, Exhibit 1, shows South avenue absolutely clear of traffic, except two automobiles parked at the northerly curb and one at the southerly curb, some little distance westerly of Broadway, and one person, a man, standing on the northerly sidewalk some feet westerly of the intersection. This exhibit shows Broadway free of traffic, except one automobile parked at the westerly curb northerly of South avenue, and four automobiles on Broadway southerly of South avenue, waiting, presumably, for the traffic signal permitting them to proceed northerly on Broadway. The other photograph, Exhibit 2, shows two automobiles parked at the southerly curb of South avenue easterly of Broadway, six, possibly seven, motor cars parked along the curb on Broadway northerly, and one southerly of South avenue, and two automobiles proceeding northerly and two southerly on Broadway, northerly of the intersection. Otherwise both streets are free of traffic, pedestrian or vehicular, except for two women and a baby buggy standing on the westerly sidewalk of Broadway northerly of South avenue. The witness Welch said: ''There is stores and a bank and the Overland salesroom on one corner and a drug-store on the other corner. As near as I can say there is a grocery store, and going further west on South street there is a residential district. I didn't see any houses right there in the intersection or around the intersection.'' And in answer to the question, ''Are they all store buildings?'' he said ''Store buildings. I imagine they live upstairs though. People live upstairs.''

It seems to me that store buildings as such do not constitute a business portion, nor mere residences a closely built-up portion of a municipality, within the meaning of Section 12603, General Code. The statute must be interpreted in the light of the object sought to be attained. A business or a closely built-up portion of a municipality must be such as to create more than the usual or ordinary traffic hazards. So far as the evidence discloses there is nothing to indicate the kind and character of the traffic upon either of these streets, except as shown in these two photographs, nor any evidence to show the character of the business conducted in the store buildings, or in fact, to show whether or not they were occupied, except as it may be inferred from signs on some of them, as shown in the photographs. If "closely built-up portion" means any part of a municipality where there are continuous residences or buildings in each direction, then, except the outlying districts thereof, practically all of each of our larger cities would fall, as a matter of law, within this description. The word "close," in its usual and accepted meaning expresses proximity, but not necessarily contact. Contact is not essential to constitute closeness. Buildings may be close to each other that are separated by intervening space; whether or not they are close being determinable by individual judgment rather than by any fixed rule. Of course the buildings, however close laterally, must be near to the street, since the statute was enacted to regulate traffic on the street; but how near? If buildings constructed to the lot or street line determine the question as a matter of law, then portions of some of the older towns of the state where

houses extend to the lot or street line, are within the statutory designation, although there is comparatively no traffic on the street which the houses abut.

And if business portion includes any part of a city where there are five or six or seven store buildings, without regard to the character or magnitude of the business done, or the number of people attracted thereby, then numerous places in every city would come within this category. The statute seems to use the term business advisedly, making the question whether any particular portion of a municipality is a business portion dependent upon the character and perhaps the magnitude of the business therein conducted.

If one might imagine a single large department store with no other buildings anywhere near it, but doing a large volume of business, causing at that particular location a congestion of traffic, both pedestrian and automobile, such location might well be found to be a business portion within the meaning of the statute.

A street in a city may be crowded with traffic and still the portion of the city through which it extends not be within the business or closely built-up portion of the city within the meaning of Section 12603, General Code. Cherry street, for example, northwesterly of Bancroft, is always crowded with traffic throughout its entire length, but not because there are houses built closely together on either side of the street, with here and there a store, but because Cherry street is a main thoroughfare for traffic to and from the westerly part of the city, as well as for traffic to and from Detroit and other Michigan cities. The law is not conscious of fractions of a day, and

it would seem that if any portion of a municipality falls within the statutory designation, measured by the usual daily activities in that community, it would continue to be such.

That reasonable minds might differ as to the character of the location in question is evidenced by the fact that the council of the city of Toledo, in the traffic regulations adopted, did not regard it as being either a business or closely built-up portion of the municipality.

The trial judge charged the jury: "Inasmuch as the intersection where the collision occurred was in a closely built-up portion of the city of Toledo, a rate of speed greater than fifteen miles an hour is *prima facie* evidence of a rate of speed greater than is reasonable and proper. *Prima facie* evidence of a fact is such as establishes the fact, and, unless rebutted or explained by the evidence, becomes conclusive, and it is to be considered as if fully proved."

Upon the evidence presented I think that the trial judge might with equal propriety have instructed the jury that the location was not as that it was a closely built-up portion of the city, within the meaning of the statute. This instruction determined for the jury what speed at this intersection was *prima facie* evidence of negligence, the question of speed being at least one of the important questions involved at the trial. I feel that these questions of fact should have been submitted to the jury and that counsel might well have asked the court to instruct the jury as to what was meant by "business or closely built-up portions" of a municipality, as used in this statute.