Robinson, J.
 

 This is an action for personal injury, instituted by John Konte against the Community Traction Company. The parties will be referred to in the relation they bore in the trial court.
 

 The accident grew out of a collision between an
 
 *515
 
 automobile in which the plaintiff was riding, driven by one Frank Fink, and a motor bus of the defendant company, at the crossing of Broadway and South streets in the city of Toledo. The specifications of negligence in the petition w|ere: First, that the bus was operated against the red light; second, that the bus was operated through the crossing at a rate of speed greater than is reasonable and proper, to wit, forty miles per hour.
 

 The defendant denied negligence in respect to both specifications and averred negligence upon the part of the plaintiff.
 

 The evidence upon the subject that the bus was operated against the red light was in conflict, and was disposed of by the jury, in answer to an interrogatory propounded to the jury as follows:
 

 “Did Frank Fink (the driver of the automobile in which John Konte was riding) operate his automobile against a red traffic light at South street and Broadwlay on September 8, 1928, at about 12:15 A. M.?” To which the jury, by nine of its members, answered: “We don’t know.”
 

 The defendant’s evidence upon ¡the subject of speed was to the effect that defendant’s driver was driving at a rate of speed of from fifteen to twenty miles per hour. The plaintiff’s evidence was to the effect that the defendant’s driver was driving at a rate of speed from thirty-five to forty miles per hour. The court charged the jury: “Inasmuch as the intersection where this collision occurred was in a closely-built-up portion of the City of Toledo, a rate of speed greater than fifteen miles an hour is
 
 prima facie
 
 evidence of a rate of speed greater than
 
 *516
 
 is reasonable and proper.
 
 Prima facie
 
 evidence of a fact is such as establishes the fact, and, unless rebutted or explained by the evidence, “becomes conclusive, and it is to be considered as if fully proved.”
 

 The only evidence upon the subject of the character of the location of the accident, as to being closely built up or otherwise, was two photographs of the crossing of the streets at the point of the collision, and surrounding territory, which disclose that on each corner of the crossing there were buildings, two stories or more in height, built out to the lot lines adjacent to the street on the two street sides of each building, but that at a little distance away from the crossing the buildings were not all built out to the lot street line, nor were they in immediate juxtaposition to each other. The photographs further disclosed street car tracks on each street and at the crossing.
 

 The jury returned a verdict for the plaintiff, upon which judgment was entered. Error was prosecuted to the Court of Appeals, where the judgment was affirmed.
 

 The interpretation of Section 12603, G-eneral Code (110 Ohio Laws, 138), is thus presented. That section reads: “Whoever operates a motor vehicle in and upon the public roads or highways at a speed greater than is reasonable and proper having regard for the width, traffic, use and the general and usual rules of such road or highway, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined as hereinafter provided. A rate of speed greater than fifteen miles an hour in the business or closely built-up portions of a municipal cor
 
 *517
 
 poration or more than twenty-five miles an hour in other portions thereof, or more than thirty-five miles an hour outside of a municipal corporation, shall be
 
 prima facie
 
 evidence of a rate of speed greater than is reasonable and proper.”
 

 The phrase “closely built-up portions” has given trial courts much difficulty, and there has grown up a practice of submitting the question whether any given locality was a closely built-up portion to the jury for determination as a question of fact, with the result that juries in one case will hold that a given location is a closely built-up portion and in another case will hold that the same location is not a closely built-up portion.
 

 Manifestly, it was not the intention of the Legislature to make the same physical condition of a given locality “closely built-up” for the purpose of making a
 
 prima facie
 
 case against one person, and not “closely built-up” for the purpose of making a
 
 prima facie
 
 case against another person. It therefore becomes the duty of this court to endeavor to ascertain the intention of the Legislature, and, if possible, to express that intention in such language as will clearly express the legislative intent, so that all persons using the public roads or highways of the state, within municipal corporations, will know what portions thereof are “closely built-up,” within the meaning of that section.
 

 It will be observed that in another part of the section the legislature treated of the width of the road, the traffic on the road, the use of the road, and the general and usual rules of the road, and required the driver of an automobile to regulate his speed
 
 *518
 
 with reference to such conditions; that in this part of the section it provides that “a rate of speed greater than fifteen miles an hour in the business or closely built-up portions of a municipal corporation * * * shall be
 
 prima facie
 
 evidence of a rate of speed greater than is reasonable and proper.”
 

 That portion of the section which is defined as the “business * * * portions of a municipal corporation” needs no interpretation. No confusion in the minds of trial courts has resulted therefrom. If ‘ ‘ closely built-up” means nothing other than the business portion, then of course the insertion of those words by the Legislature was without purpose.
 

 Courts, interpreting a statute, will not assume that the Legislature, in enacting legislation, inserts words and phrases for no purpose, unless no purpose can be found which such words or phrases can serve.
 

 The enactment of this section was for the purpose of preserving and promoting the safety of persons upon the roads and highw'ays. In interpreting the • language appearing in the section, a court will be guided to its interpretation thereof, within the reasonable meaning of the language used, by the purpose which impelled the enactment of the legislation. “Closely built-up” necessarily is a relative term. It goes without saying that the Legislature was dealing with buildings, but the confusion grows out of the uncertainty of the object with which the Legislature intended to relate such buildings. If it was the intention of the Legislature to relate the position of such buildings to each other, a closely built-up portion of a municipality would exist where
 
 *519
 
 all the buildings were set back from the street line a distance of many feet, but were in actual or near contact with each other. Necessarily, where the buildings are built so close together as to occupy all of the ground laterally, they would accommodate a larger number of people than if they occupied only half of such ground, the heighth and depth of the building being the same.
 

 It might well be argued that the Legislature had in mind limiting the rate of speed in the locality where the greater number of people congregate or dwell, because the very presence of the greater number of people would tend to increase the use of the road or highway and to increase the danger in proportion to the increased use. But traffic is not a static condition. It is a condition that varies from day to day, and during the various periods of each day, and the duty to have regard for such condition existed at common law before the enactment of Section 12603, and exists now, irrespective of the provisions of that section — a duty to exercise ordinary care.
 

 Having in the first part of that section reaffirmed the common law, the Legislature extended the common law by providing that proof of the existence of certain static conditions within municipalities and proof of a given rate of speed would make a
 
 prima facie
 
 case that such speed was unreasonable and improper.
 

 Having in mind the purpose of the legislation, to wit, preserving and promoting the safety of persons upon the roads and highways, it does not seem to be the most reasonable interpretation, nor the in
 
 *520
 
 terpretation most likely to accomplish the purpose the Legislature had in mind, to interpret that language as relating to the position of the buildings to each other; for the safety with which a road or highway may be used is not dependent to any extent upon the distance the driver of an automobile can see to either side of the road, except at crossings and intersections.
 

 In a portion of a municipality where all the buildings are set back a considerable distance from the street lot line, the proximity of the buildings to each other in such situation adds little to the danger of the use of the street. In a portion, however, of a municipality where the buildings, at intersections and at crossings, are built upon the street lot line, the view of the user of the street at every such intersection and crossing is obstructed by the building between him and the intersection or crossing, and the danger of collision is correspondingly increased.
 

 It would seem, therefore, that the accomplishment of the purpose of the enactment of the section would require the interpretation that, when the Legislature used the words, “in the closely built-up portion,” it was using the words in the relationship of the buildings to the road or highway rather than in the relationship of the buildings to each other, and that “closely built-up portions of a municipal corporation” are those portions of the corporation upon which there are buildings upon or near to the street lot line, which operate to obstruct the vision of the user of the street at intersections and crossings.
 

 In the instant case there was no dispute in the evidence that there was such a building upon each cor
 
 *521
 
 ner of the crossing, and, in several directions, more than one building. The photographs were offered by the mutual consent of both parties to the suit, as representing the exact situation. It then became a question of law for the court to determine whether such situation was within the meaning of the statute a closely built-up portion of the municipality, and his duty to instruct the jury in accordance with such determination. The court correctly construed the statute, and there was no error in his charge in that respect.
 

 The evidence upon the subject of the speed of the defendant was in conflict, and ranged as high as forty miles per hour. The question of the speed of the defendant was submitted to the jury, without any special interrogatory. The rate of such speed it actually found does not appear. While the presence and operation of the automatic “stop” and “go” signal might well rebut the
 
 prima facie
 
 case made by the proof of speed in excess of fifteen miles per hour in a closely built-up portion of a municipality, it could not be held as a matter of law that at any point within a municipality, under Section 12603, General Code, as it then read, that the maximum rate of speed the evidence tended to prove did not amount to a failure to exercise ordinary care, nor that such failure was not the proximate cause of the injury. The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Jones, Matthias, Day and Aelen, JJ.? concur,