# CARMAN v. HUFF.—227 S. W. (2d) 780.

Eastern Section. August 22, 1949.

Petition for Certiorari denied by Supreme Court, December 10, 1949.

688

690

Frantz, McConnell & Seymour, of Knoxville, for plaintiff in error.

Hodges & Doughty, of Knoxville, for defendant in error.

McAMIS, J. Mrs. Maude Huff instituted this suit against Patrick Henry Carman, administrator of the estate of J. T. Carman, deceased, to recover for personal injuries sustained while riding as a guest in the automobile of deceased. Mr. Carman, who was driving, lost his life in the same accident and, as indicated, process was served upon his administrator. Process was also served upon M. L. Wilkerson, the owner of the truck with

which the Carman car collided. No process was served upon Arlie R. Smithers who was driving the truck for Wilkerson though Smithers was also made a party defendant. The parties will be referred to by name or as plaintiff and defendants, respectively, as in the trial court.

The collision occurred on May 1, 1947, at the intersection of U. S. Highway 11-W and Chilhowee Drive, a short distance east of Knoxville. Highway 11-W at the point of intersection with Chilhowee Drive runs east and west. On the east it is straight for a distance of one-half mile or more and is slightly down grade until it reaches the intersection. The Wilkerson truck, loaded with lime, was traveling west on Highway 11-W and approaching the intersection at a speed of 35 or 40 miles per hour.

Chilhowee Drive, a county highway, runs generally north and south. The approach to Highway 11-W is level and straight. There is material evidence that, prior to the accident, a stop sign had been erected on Chilhowee Drive requiring north bound traffic on it to come to a stop before entering the intersection. The exact location of the sign, whether immediately at the corner of the intersection or further south on Chilhowee Drive, does not appear from the evidence. The Carman car, a 1929 Ford coupe, approached the intersection going north on Chilhowee at a speed of approximately 15 miles per hour. It proceeded into the intersection without stopping or slowing its speed and collided with the truck near the center of Highway 11-W. Both vehicles finally came to rest in a field south of the Highway at a point 50 steps or more west of the intersection, with the truck resting on top of the car.

The declaration charges that the deceased Carman negligently failed to heed the stop sign as required of him and proceeded into the intersection at a reckless, dangerous, and negligent rate of speed and that the Wilkerson truck was also being operated at an excessive rate of speed without due care and circumspection and without keeping a lookout ahead. The jury returned a verdict for $3,500 in favor of Mrs. Huff and against Carman, administrator, against whom judgment was rendered for that amount. The jury returned a verdict for the defendant Wilkerson (as indicated no process was served on the driver, Smithers) upon which a judgment dismissing the suit as to Wilkerson was entered. Plaintiff has not appealed from that action.

We quote the succinct and clear statement by counsel for the administrator of the questions presented for our determination:

"(1) Whether or not there is any evidence to support a verdict of the jury in favor of the Plaintiff, or whether the evidence shows Plaintiff guilty of such contributory negligence as bars her recovery.

"(2) Whether or not the verdict was excessive.

"(3) The application of Section 9780 of the Tennessee Code, commonly known as the Dead Man's Statute, to the testimony of a Plaintiff in a joint action against an Administrator of a deceased person and two individual Defendants for personal injuries growing out of an automobile accident.

"(4) The application of Section 9780 of the Tennessee Code to the testimony of a Defendant sued jointly with an Administrator of a deceased person and another individual, where the Defendant testifying could not be served with process by reason of absence from the state.

"(5) Whether or not the Court erred in refusing to permit the Defendant, Administrator, to cross-examine the Plaintiff about the facts and circumstances surrounding an accident in which the Administrator's intestate was killed, when the Court had ruled that such testimony was admissible only as against an individual Defendant.

"(6) Whether or not the Court erred in refusing certain requests for special charges submitted by the Defendant.

"(7) Whether or not the Court erroneously charged the jury with respect to the liability of the Defendant."

There is abundant testimony, other than that of plaintiff, that the deceased, Mr. Carman, proceeded into the intersection without stopping and, apparently, without looking to the right for traffic coming from that direction. At least two witnesses so testified and there is no proof to the contrary. There is some dispute as to whether or not a stop sign had been erected but that is a disputed issue and clearly a jury finding, implicit in the verdict, that a stop sign had been erected is supported by material evidence.

When plaintiff was about to testify as to what occurred immediately before, and at the time of, the collision the court, upon objection of counsel for the administrator, excluded her testimony as being incompetent against the administrator under Code Section 9780. The jury was accordingly instructed that her testimony as to such matters could be considered only in determining the liability of defendant Wilkerson and not against the administrator. It was ruled, at the same time, that if counsel for the administrator should cross examine the witness, as to such matters, the administra-

tor would be "calling" her as his witness and the statute would not apply.

Despite this ruling, counsel for the administrator cross examined plaintiff, in pertinent part, as follows:

"Q. Now Mrs. Huff, from the time you left, when you entered into the intersection, when you started into the intersection there at highway 11, and Chilhowee Drive, did you ever look to your right up that hill to see whether there was anything coming? A. No, I didn't. I looked when the truck was right at us. That is the only time I turned my head.

"Q. Do you know whether there was a stop sign on the corner? A. No, because I wasn't familiar with the road, and when I am not driving, I don't look for stop signs, I depend on the driver.

"Q. You weren't concerned yourself with what was going on at all? A. No."

On cross examination by counsel for Wilkerson, Mrs. Huff testified that, because of a large sign near the intersection, (also a tree) she could not see more than 100 feet on Highway 11-W east of the intersection and that she was looking straight ahead thinking Mr. Carman intended to continue across the highway and that before reaching the intersection she had cautioned Mr. Carman about getting so enthusiastic in his conversation that he allowed the car to get on the wrong side of the highway.

This testimony is undisputed and it is unnecessary to decide whether the administrator, by cross examining Mrs. Huff, made her his witness. He had a right to call her as his witness subject only to the penalty of being bound by her testimony. The testimony elicited from her in the course of the administrator's cross examination is all favorable to him and the penalty

amounts to nothing. It was testimony to be considered by the jury. We have concluded, however, that taken at full value it was not such as to warrant a directed verdict on the ground of proximate contributory negligence.

Renfro v. Keen, 19 Tenn. App. 345, 89 S. W. (2d) 170, 172, contains a clear and exhaustive review and digest of prior Tennessee cases dealing with the submission to the jury of the issue of contributory negligence in guest cases. In the course of the opinion, written by Judge DeWitt, it was said: "Issues as to contributory negligence of guests who gave no warning or remonstrance were held to be for the jury and verdicts excusing such guests for such failures were sustained where the emergencies came suddenly and the view was obstructed [Stem v. Nashville Interurban Ry., 142 Tenn. 494, 221 S. W. 192; Johnson, Adm'r & Faucette v. Maury County Trust Co., 15 Tenn. App. 326; Tenn. Central Ry. Co. v. Vanhoy, 143 Tenn. 312, 226 S. W. 225; Knoxville Railway & Light Co. v. Vangilder, 132 Tenn. 487, 178 S. W. 1117, L. R. A. 1916A, 1111; Nashville, C. & St. L. Railway v. White, 158 Tenn. 407, 15 S. W. (2d) 1; Louisville & N. R. Co. v. Tracey, 12 Tenn. App. 167]; where there was a sudden collision not immediately to be anticipated [Claxton v. Claxton, 16 Tenn. App. 399, 64 S. W. (2d) 854; Woodfin v. Insel, 13 Tenn. App. 493] . . ."

Subsequent cases include Gulf, M. & O. R. Co. v. Underwood, 182 Tenn. 467, 187 S. W. (2d) 777; Edenton v. McKelvey, 186 Tenn. 655, 212 S. W. (2d) 616; Roddy Mfg. Co. et al. v. Dixon et al., 21 Tenn. App. 81, 105 S. W. (2d) 513; Chickasaw Wood Products Co. v. Lane, 22 Tenn. App. 596, 125 S. W. (2d) 164; Shook v. Simmons, 23 Tenn. App. 685, 137 S. W. (2d) 332.

Gulf, M. & O. R. Co. v. Underwood involved analogous circumstances. Mrs. Underwood, the plaintiff, was

injured at a railroad crossing while riding as a guest of one Mrs. Inman. The accident occurred at night. Mrs. Underwood admitted that she knew there was a railroad crossing on the street but denied that she knew exactly where it was. In the course of the opinion, written by Mr. Justice Gailor, the Court significantly said: ". . . if we are to say that Mrs. Underwood was guilty of proximate contributory negligence as a matter of law and so prevent a submission of her case on the facts to the determination of a jury, she must, at the time of her injury or immediately prior thereto, (1) have been guilty of acquiescing in the violation of some statute or ordinance which proximately caused her injuries, or (2) she must, at the time, by undisputed evidence, have been guilty of such conduct as would in the unanimous judgment of all men, have constituted proximate negligence. Admit for argument, that Mrs. Underwood knew of the crossing, that it was dark and drizzling rain. She was a guest in the automobile, and not the driver, and we think, under the peculiar facts of this case, could only be held to a duty to interfere with the driver by warning or taking other steps for her own safety—not when the danger became apparent, but when Mrs. Underwood became aware, or in the exercise of reasonable diligence should have been aware, not only of the danger but of the additional fact that Mrs. Inman, the driver, was not doing what a reasonably prudent driver would do to meet the apparent danger." [182 Tenn. 467, 187 S. W. (2d) 778.]

To apply the clear holding in that case to this, Mrs. Huff could be held guilty of proximate contributory negligence as a matter of law only if it appeared from undisputed evidence that when she became aware, or in the exercise of reasonable diligence should have become

aware of Mr. Carman's failure to stop there was yet time to make an effectual protest. Until that time she could rely upon the assumption that the driver of the automobile would exercise proper care and caution, the danger not being obvious or known. Knoxville Railway & Light Co. v. Van Gilder, 132 Tenn. 487, 489, 178 S. W. 1117, L. R. A. 1916A, 1111; Tenn. Central R. Co. v. Van Hoy, 143 Tenn. 312, 226 S. W. 225.

None of our cases deals with the duty of a guest to maintain a lookout for stop signs and protest the failure of the driver to stop in obedience to the sign before entering the intersection.

The rule to be deduced from cases in other jurisdictions deciding the point is that a guest is bound to exercise only ordinary care for his own safety and, in the absence of obvious or known danger or knowledge superior to that of the driver as to the location of traffic signs, is not bound, as a matter of law, to be constantly upon the lookout for stop signs in order to be in position to warn the driver to stop and observe them, the question being generally for the jury. Reed v. Coleman, Mo. App., 167 S. W. (2d) 125; Community Traction Co. v. Konte, 35 Ohio App. 361, 172 N. E. 533, affirmed in 122 Ohio St. 514, 172 N. E. 442; Davis v. Dondanville, 107 Ind. App. 665, 26 N. E. (2d) 568; Jacobsen v. Ahasay, 188 Minn. 179, 246 N. W. 670; Isaacs v. City and County of San Francisco, 73 Cal. App. (2d) 621, 167 P. (2d) 221; Brightman v. Blanchette, 307 Mass. 584, 30 N. E. (2d) 864. See also 5 Am. Jur. p. 778, Automobiles, Section 488.

In this case, the plaintiff-guest was riding in a car traveling only 15 miles per hour so that it could have been stopped quickly before emerging on the favored

highway. She was not familiar with the road nor aware of the stop sign. The exact location of the sign is not shown and reasonable minds might not agree as to whether, if it had been seen, there was adequate time to warn the driver or protest. We think reasonable men might differ as to the guest's duties under the circumstances.

We come next to a consideration of the Court's rulings in respect to Code Section 9780 providing: "In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward unless called to testify thereto by the opposite party."

██ ██ (a) The Court sustained the objection of the administrator to the testimony of Mrs. Huff as to events immediately preceding the accident as being a transaction with the deceased. Assuming the correctness of that ruling, we think it was proper to hold that if the administrator cross examined the witness as to matters about which she was not permitted to testify against him, as to such matters, she would be "called to testify" and her testimony thus elicited competent. If it was error to apply the statute to a tort action, a question not necessary to consider,[1] the error was induced by the administrator and he cannot complain of the necessary result of the error. If the statute does apply, as the Court held, the effect of the Court's ruling was to put the parties on an equal footing. A contrary ruling would have given the administrator the full benefit of the

---

1. We have held that the statute does not generally apply in tort actions. Newman v. Tipton, Blount Law, in which certiorari has been granted by the Supreme Court.

statute by depriving the plaintiff of the right to testify and the additional right to use the favorable portions of her testimony without making her his witness. The result would have been inequality—not that equality which was the design and purpose of the statute.

■ (b) We think the Court was correct in permitting plaintiff to testify as to what occurred immediately preceding the collision, limiting consideration of that portion of her testimony to her action against Wilkerson, since the statute did not apply in her suit against Wilkerson. The Court repeatedly and carefully both during the trial and in the charge admonished the jury to consider the testimony only as applying to Wilkerson and not to the administrator. We do not think the administrator can claim his right under the statute to have testimony excluded in a manner to deprive plaintiff of her right to introduce the same testimony in good faith against a third person. If the statute makes her an incompetent witness rather than merely making her testimony inadmissible, as the administrator insists, she is an incompetent witness only in her action against the administrator and not in her action against Wilkerson.

■ (c) There was no error in permitting Smithers to testify as a witness for plaintiff. True, he was a party to the suit though no process had been served upon him when he was offered as a witness. It is clear, however, that he is not a party to the "transaction" within the meaning of the statute.

As said by Presiding Judge Anderson in Kurn v. Weaver, 25 Tenn. App. 556, 580, 161 S. W. (2d) 1005, 1021: "Construed in the light of the object sought to be accomplished, we think the provision necessarily contemplates only those cases wherein judgment may be rendered for the representative party and against the

proposed witness, or vice versa.'' See also Montague v. Thomason, 91 Tenn. 168, 18 S. W. 264.

■ It is true it may have been to the interest of Smithers to throw the blame on the administrator against the possibility that he might be served with process and forced to defend the suit. But interest alone is not a disqualifying factor. The statute cannot be extended to cases not embraced within its terms on the theory that they fall within the evil intended to be remedied. Rielly v. English, 77 Tenn. 16.

■ ■ Only one affirmative error in the charge is claimed. It is based upon the insistence that the court erred in charging the jury that the administrator could be held liable if ''J. T. Carman was guilty of some act or omission which proximately caused the injuries to the plaintiff of which she is complaining . . ..'' It is said this was error because of the omission of the word ''negligent'' in describing the act or omission which would impose liability. Considered in complete isolation from the charge elsewhere given and repeated that it was incumbent upon the plaintiff before any recovery could be had against the administrator ''to prove some actionable negligence on the part of J. T. Carman, the intestate of the Administrator defendant . . .'', there would be force in this argument. But it is a rule of frequent application that the court, on appeal, must consider the charge as a whole and a specific portion of which complaint is made in connection with its context. So considered, we think, there was no error in the charge.

Assignments eight and nine complain of the refusal of the court to charge special requests to the effect that plaintiff was required to exercise more diligence and watchfulness while riding with a man of the age and

physical condition of J. T. Carman and that if the jury should find that, by reason of the infirmities of age, "the deceased would have been considered an unsafe driver by an ordinarily prudent person, and that plaintiff was aware, or should have been aware of such infirmities, her riding in the automobile with him would be negligence which would bar her recovery, and your verdict will be for the defendant, Patrick Carman, Administrator."

Such infirmities and the negligence of a guest in riding with such a driver might or might not constitute a proximate cause and, to that extent, the requests are not accurate and complete. In addition, it is not considered good practice for the court to single out particular facts or emphasize particular evidence in the charge to the jury thus leading the jury to believe that the court thinks such evidence of great weight. Stevens v. Moore, 24 Tenn. App. 61, 76, 139 S. W. (2d) 710, and cases there cited. For these reasons, we think there was no reversible error in refusing to charge the special requests tendered.

Another request tendered by the administrator was to the effect that he would not be liable if plaintiff's injuries were not caused by the initial collision but by the subsequent maneuvering of the truck by Smithers. We think this charge would have been out of place. It was all one accident caused either by the negligence of the deceased or of Smithers. It is almost inconceivable that either had any control over the vehicle or was guilty of negligence in its operation after the original impact. We are clearly of opinion no reversible error was committed in refusing this request.

The final requested charge refused by the court dealt with the degree of care owing by a guest at an inter-

702

section controlled by a stop sign which, we think, was adequately covered in the general charge.

 This brings us to the final insistence that the verdict for $3,500 is excessive. In approaching this question we must bear in mind that the amount of compensation due in personal injury cases cannot be determined with mathematical precision. The amount is primarily for the jury to determine and, it is said, next to the jury the most competent person to pass upon the amount representing fair compensation is the judge who presided at the trial and heard the evidence. Reeves v. Catignani, 157 Tenn. 173, 176, 7 S. W. (2d) 38. The sphere within which the court on appeal may interfere is in cases where the trial judge has failed to keep the jury within reasonable bounds, his concurrence with the jury being entitled to much weight, City of Nashville v. Brown, 25 Tenn. App. 340, 350, 157 S. W. (2d) 612, and our duty being to take into consideration the nature and extent of the injury, the suffering, expenses, diminution in earning capacity, expectancy of life and, as said by Judge Burnett, now Mr. Justice Burnett, in Town of Clinton v. Davis, 27 Tenn. App. 29, 42, 177 S. W. (2d) 848, bear in mind the amount awarded in other similar cases.

The record shows that Mrs. Huff received serious and painful injuries. She testified that she "had a fractured skull and my back was hurt, and my legs, and a broken collar bone". The accident occurred on Thursday afternoon. She recovered consciousness on the following Sunday morning in the hospital where she was confined for a period of two weeks. She was then taken home, unable to walk, which condition continued for six weeks while she remained in bed at her home. Thereafter she

walked with the aid of sticks until late in August and at the time of the trial, 18 months after the accident, she was still unable to walk as well as before she was injured: Her sleeping has been disturbed, her nerves affected and there can be no doubt that she suffered severe pain for a considerable time.

Dr. Penn saw her on the day she was injured and found that she had "considerable swelling involving the face, associated with a bluish discoloration of skin about her eye", was suffering with pain in the right shoulder region and chest, had scalp lacerations, pain in the lower back and a fractured collar bone. She incurred medical and hospital expenses totalling approximately $400. At the time she was injured she was 63 years of age.

Allowing the jury and trial judge their proper latitude in fixing the amount to which plaintiff is entitled under all the circumstances and, bearing in mind the depreciated purchasing power of money, we are unable to say that the verdict is excessive.

We find no error and it results that all assignments must be overruled and the judgment affirmed with costs.

Hale and Howard, JJ., concur.