# THOMAS J. ROGERS, Plaintiff-in-Error, v. JANE C. BOUCHARD, Defendant-in-Error. —449 S.W.2d 431.

Middle Section.   August 29, 1969.

Certiorari Denied by Supreme Court January 19, 1970.

Cunningham & Mitchell, Clarksville, Keith & Kirkham, Hopkinsville, Ky., for plaintiff in error.

Daniel, Harvill, Batson & Nolan, Clarksville, for defendant in error.

PURYEAR, J. The defendant-in-error was the plaintiff in the trial Court and the plaintiff-in-error was the defendant therein, so we will refer to the parties here as plaintiff and defendant as they were designated in the trial Court. The case before us on this appeal is one of two consolidated cases which arose out of an automobile accident occurring on U.S. Highway 41-A north of Clarksville, Tennessee, in the night time on June 1, 1966.

The plaintiff, Jane C. Bouchard, is the wife of Raymond E. Bouchard, Jr., who was a Lieutenant in the United States Army stationed at Fort Campbell, Kentucky, at the time of accident. Both the husband and the wife were injured in the accident, but it is only the wife's case which is before us on this appeal.

Plaintiff sued for damages for personal injuries and her declaration contains three counts. Because it is especially pertinent to one of the questions raised on this appeal we quote the following allegation contained in the plaintiff's declaration:

"Plaintiff specifically charges that the Defendant, in the operation of his vehicle on the occasion of this accident, drove the same at a high, dangerous and unlawful rate of speed, without maintaining the proper lookout ahead, without maintaining proper control over his vehicle so as to be able to stop the same or to avoid a collision with the vehicle of the Plaintiff, *without maintaining proper lights on said vehicle or failing to drive the vehicle at the time with proper lighting equipment.*" (Emphasis supplied.) (Tec. Rec. pp. 3, 4)

To the declaration and all of the allegations thereof, the defendant, Thomas J. Rogers, filed a general issue plea of not guilty and the two cases, that is, the one on

appeal here and also the husband's case, were consolidated and tried together before the Circuit Judge, Honorable Thomas Boyers, III, and a jury.

Defendant's counsel moved for a directed verdict at the conclusion of plaintiff's proof and again at conclusion of all the proof, which motion was overruled.

The trial resulted in a jury verdict for the defendant in the husband's case and a jury verdict in favor of the wife in her case, wherein the jury awarded $15,000.00 for personal injuries and $379.00 for the use and benefit of the United States of America for the value of medical care furnished by the government to plaintiff as the dependent of a member of the United States Army.

Judgment was rendered in favor of plaintiff, Jane C. Bouchard, for $15,000.00 for her personal injuries and also $379.00 for the value of medical expenses claimed by the United States of America, the latter amount of $379.00 being awarded for the use and benefit of the United States of America.

Defendant filed a motion for a new trial, which was overruled, and the defendant has prayed and perfected his appeal in error to this Court. The husband did not appeal from the judgment rendered against him.

Defendant has filed six assignments of error as follows:

### Error No. 1

"There was no evidence to support the verdict and the Trial Court erred in overruling the defendant's motion for a new trial based on the First, Second, Third, Fourth, and Sixth grounds, that there was no evidence to support the verdict, the verdict is contrary

to the evidence, the evidence preponderates against the verdict and in favor of the defendant, the verdict is the result of passion, prejudice or unaccountable caprice and sympathy, and the verdict is inconsistent with the verdict in the consolidated case of Raymond E. Bouchard, Jr. vs. Thomas J. Rogers.

## *Error No. 2*

The Trial Court erred in overruling the defendant's motion for a directed verdict made at the conclusion of the plaintiff's evidence (R. 245, 246), and renewed at the conclusion of all the evidence (R. 366), and in overruling the defendant's motion for a new trial based on the Fifth ground to this effect.

## *Error No. 3*

The Trial Court erred in refusing to charge the jury the defendant's following special request and in overruling the Seventh ground of the motion for a new trial in this respect:

'A person riding in an automobile as a passenger or guest cannot rely upon the care and vigilance of the driver to the extent of relieving himself or herself from the exercise of reasonable precaution for his or her own safety and has a duty to see any danger which can reasonably be seen and to warn the driver. If an adult, while riding in a car driven by another, sees, or ought by due diligence to see, that the driver is not taking proper precaution, it is the duty of the passenger to *demonstrate,* or give him warning of danger, and a failure to do so is negligence. A person riding in an automobile must exercise due care for his or her own safety, and this obligation is a continuing personal one.'

## Error No. 4

The Trial Court erred in refusing to charge the jury the defendant's following special request and in overruling the Eighth ground of the motion for a new trial in this respect:

'A person is required to see what is plainly visible, and what he or she could or should have seen in the exercise of ordinary care. 'Ordinary prudence requires every person who is in full enjoyment of his or her faculties of hearing and seeing, before attempting a dangerous act or operation, to exercise them for the purpose of discovering and avoiding the peril. A duty rests upon everyone to exercise his or her intelligence to its fullest extent and to make such use of external senses in the interest of his or her own safety as is reasonable under the circumstances. A person must exercise reasonable care to observe the conduct of another person, so far as such conduct affects his own safety at the time. He is bound to look, and listen, where such precautions are reasonably required to prevent injury to himself or herself.'

## Error No. 5

The Trial Court erred in refusing to charge the jury the defendant's following special request and in overruling the Ninth ground of the motion for a new trial in this respect:

'While ordinarily the negligence of a husband who is driving a vehicle in which his wife is riding as a passenger cannot be imputed to his wife, the marriage relationship does not preclude the negligence of one spouse from being imputed to the other, and the wife if not to be absolved of her husband's negligence in

driving the vehicle if it appears that she had any joint part in directing its movement; or had any grounds for suspecting incompetency or anticipating negligence on her husband's part.'

### Error No. 6

The Trial Court erred in placing undue emphasis upon the right of the plaintiff to recover damages in his statements to the jury when they requested additional instructions, (R. 390, 391, 392), as this was prejudicial to the defendant and influenced the jury in awarding a verdict for the plaintiff, which was inconsistent with the verdict in the consolidated case of Raymond E. Bouchard, Jr. vs. Thomas J. Rogers, and in overruling the Eleventh ground of the motion for a new trial in this respect."

The only eye witnesses who testified consisted of the plaintiff, her husband, Lieutenant Raymond E. Bouchard, Jr., another soldier by the name of William H. Belt, the defendant Thomas J. Rogers, and one Jesse Soils, both of whom are also soldiers, and the latter of whom was a passenger in the Rogers automobile.

Lieutenant Bouchard, who was a Captain at the time the case was tried, testified that he and his wife resided on the military reservation at Fort Campbell, Kentucky, and that on the night of the accident at about 6:00 P.M. they left the military reservation to drive to the nearby town of Clarksville, Tennessee, to see a movie, but changed their minds and on their way back home stopped to eat at a restaurant and then stopped at "Grandpa's" store which is located between Clarksville and Fort Campbell, on the west side of U.S. Highway 41-A, which is a four-lane highway with a median section dividing

the southbound lanes from the northbound lanes. Therefore, "Grandpa's" store was located on the side of the highway that was adjacent to the southbound lanes.

He testified that when they got ready to leave the store, he backed his station wagon out of a parking place on the lot in front of said store, turned around and drove to the north area of the parking lot, with the plaintiff, Mrs. Bouchard, beside him on the front seat, intending to exit from the north exit of the lot and drive across the two southbound lanes of 41-A through the crossover which was approximately opposite the north exit of said lot and into the northbound lanes toward Fort Campbell; that he stopped just a few feet before entering the highway, where he could see both to his left (which would be northwardly) and to his right (which would be southwardly) for approximately 300 yards in each direction and looked for approaching traffic from both directions; that he did not see any traffic or lights approaching from either direction and when he asked plaintiff if she saw any, she replied in the negative, whereupon he proceeded to drive across the southbound lanes and was there struck by the automobile of defendant, Thomas J. Rogers, just as he was about to enter the crossover opening in the median strip; that he was knocked unconscious in the collision; that both he and his wife were injured and his automobile wrecked.

Plaintiff testified that she was seated in the front seat of the station wagon when they left "Grandpa's" store and that when her husband drove to the edge of the highway, he stopped and they looked for approaching traffic before he pulled out into the highway. Plaintiff's testimony on this important phase of the matter was as follows:

"Q. What did your husband do as he drove up to that exit? Explain that?

A. Well he drove up to the exit, stopped and looked.

Q. How do you know he looked?

A. He just wouldn't go out without looking.

Q. Do you recall whether you looked?

A. Yes, he asked me if I saw anything and I looked also.

Q. Which way did you look?

A. To the left, towards Fort Campbell.

Q. Did you see any vehicles coming?

A. No, we saw nothing.

Q. Did you see any lights on a vehicle coming?

A. No.

Q. Where did your husband stop the station wagon?

A. Right at the exit there, he didn't go out on the pavement or anything.

Q. Well when he stopped did he stop on the traveled portion of the road or back from the road somewhere in the parking lot?

A. In the parking lot.

Q. All right now Mrs. Bouchard as you started forward from the position that you were stopped in there in the parking lot, what direction did he drive toward, what was the direction of travel?

A. Across.

564

Q. Across?

A. Yes.

Q. Do you know whether or not it was straight across, pointed more towards Clarksville or pointed more towards Fort Campbell?

A. Slightly towards Fort Campbell.

Q. Why was it towards Fort Campbell?

A. Because the break in the median is not exactly across it is just slightly over.

Q. Now Mrs. Bouchard at any time before the impact occurred did you see the lights of an oncoming vehicle?

A. No.

Q. Did you ever see the car that struck you?

A. No, I am sorry, may I recall that?

Q. Yes.

A. I saw it a split second before it hit.

Q. You saw it a split second before it hit?

A. Yes.

Q. Well did you have time to do anything or did you do anything?

A. No it was just right there." (B. of E. pp. 192, 193)

William H. Belt testified by deposition and the pertinent part of his testimony is as follows:

That he and his wife and six months old child were going to "Grandpa's" store in his automobile; that they

had driven from Clarksville and stopped by the crossover after having turned from the northbound lanes of 41-A, intending to drive into the parking area at the south entrance-exit of the parking lot at the store and across the southbound lanes in order to do so; that he estimated the distance between the crossover where he was stopped and the crossover at the north end of said parking lot to be about 300 feet; that he saw the Bouchard station wagon drive out of the parking lot at the north end of the lot and into the southbound lanes. Mr. Belt's testimony on this particular phase of the matter is as follows:

"Q. Now did you look to see if there was any traffic coming from Fort Campbell, coming down the highway southbound toward you, as you saw that situation of that stationwagon moving?

A. I looked all the way up to the top of the hill up there —up towards the church, and I didn't see anybody. I didn't see any cars at all.

Q. Could you see the lights or did you see the lights of any oncoming traffic at all?

A. No I didn't.

Q. Go on and just tell us what you saw?

A. Well I stopped and I looked up that way—up toward the top of the hill at Ringgold, and I saw this stationwagon starting to pull out of Grandpa's parking lot. I was going to wait and see if he was going to turn toward Clarksville or go toward Fort Campbell —cross over and go on toward Fort Campbell. He pulled out on the road and I was getting ready to pull on through and all of a sudden a car jumped up in the

air and there was a terrific impact, and the cars were spinning around in the air.

Q. Did you get out of your car and go up there to the scene of this crash?

A. Yes I did. I pulled my car on across the lane into Grandpa's parking lot and parked right beside the Grandpa sign, and jumped out of my car and went over to this black Buick or Oldsmobile sitting over in the ditch.

Q. Let me ask you this Mr. Belt. Did you ever move your car anymore after you said that you were stopped there before crossing the highway and looking for traffic—did you pull forward or move your car any from that time until the actual impact happened—you were still stopped all that time?

A. I stopped right there.

Q. Now at any time from the time you stopped until this crash took place that you described—you said you saw the cars up in the air, had you seen the cars coming southbound on the highway?

A. No I hadn't.

Q. And had you looked in that direction?

A. Yes I had. I told my wife to look over that way too.

Q. In the position that your car was stopped there in the crossover, was there any difficulty in your looking up the highway or seeing oncoming traffic?

A. No sir, there wasn't.

Q. Did you see the stationwagon as it started out onto the highway?

A. Yes I did.

Q. And at that time, did you see the lights of any oncoming traffic?

A. No. (B. of E. pp. 130, 131, 132)

The defendant, Thomas J. Rogers, testified that he was a soldier in the United States Army stationed at Fort Campbell; that he owned an automobile, same being an Oldsmobile for about a month before the accident; that it was registered at the Fort Campbell military post and had, shortly before the accident, been thoroughly checked and approved for operational use, which was a requirement for registration of a vehicle at Fort Campbell; that the ony defect revealed by such inspection was a defective muffler, which he replaced with another muffler on the very day that the accident occurred.

He further testified that he and four of his fellow soldiers stationed at Fort Campbell drove from there toward Clarksville, that he stopped to get gasoline at a service station across the highway from one of the entrances to Fort Campbell and then proceeded south toward Clarksville on U.S. Highway 41-A at about 8:00 or 8:15 P.M.; that the headlights on his automobile were turned on; that at the time of the accident he was driving at a speed of 45 to 50 miles per hour in the inside lane of the southbound lanes after passing another automobile, and when he was 75 to 100 feet from the north entrance to "Grandpa's" store, the Bouchard station wagon pulled out into the highway in front of him and he had no way to avoid colliding with it, although he tried to avoid the collision by swerving to his left and tried to apply his brakes, but the accident happened so quickly that he did not know whether he got his brakes on or not;

that when he first saw the Bouchard automobile it was pulling out into the highway directly in front of him.

Although there were four other persons in the automobile with Rogers at the time, three of them were not available to testify and therefore only one of them namely, Jesse Soils, testified and his testimony is in substance as follows:

That at the time of the accident, he was riding in the front seat of the defendant's automobile next to the right door and another soldier, by the name of Vick, was in the center of the front seat and the other two soldiers were on the rear seat; that the traffic on the highway was heavy, that the defendant was driving between 45 and 55 miles per hour and as they approached "Grandpa's" store, that he saw the Bouchard automobile stopped on the side of the highway and just before they got to where it was, it pulled out into the highway in front of the defendant's car and collided with it, although the defendant tried to avoid the collision by swerving to his left.

Although there is much additional evidence in the record, all of which has been carefully considered, the foregoing is the only portion of such evidence to which we need to specifically refer for the purpose of considering the assignments of error.

The effect of the first two assignments is that the defendant insists there was no evidence to support the verdict of the jury.

Of course, we cannot weigh the evidence for the purpose of considering whether or not it preponderates in favor of or against the verdict of the jury because of the often quoted rule which prevents the weighing of such

evidence by the Appellate Court in a civil case where a jury verdict has been approved by the trial Court. Rogers v. Murfreesboro Housing Authority, 51 Tenn.App. 163, 365 S.W.2d 441 (1963); Jones v. Noel, 30 Tenn.App. 184, 204 S.W.2d 336 (1947); Atlantic Ice & Coal Co. v. Cameron, 19 Tenn.App. 675, 95 S.W.2d 72 (1935).

As heretofore stated by us, in this opinion, the defendant made a motion at the conclusion of plaintiff's evidence and also at the conclusion of all of the evidence that the trial Court direct a verdict in favor of defendant, which motion for a directed verdict was overruled.

In considering the question of whether or not there is any material evidence to support the verdict of the jury and whether or not it was error for the trial Court to overrule defendant's motion for a directed verdict, we are required to follow the rule which has been stated in many opinions by this Court and the Supreme Court, including the opinion in General Motors Corp. v. Dodson, 47 Tenn.App. 438, 338 S.W.2d 655 (1960), as follows:

" 'The rule for determining a motion for a directed verdict has often been stated in numerous cases. It has been fashioned to preserve the constitutional right of trial by jury and to administer the common law separation of function by which the jury try the fact and the judge the law. It requires the trial judge, and the appellate court on review, to look to all the evidence, to take the strongest legitimate view of it in favor of the opponent of the motion, to allow all reasonable inferences from it in his favor, to discard all countervailing evidence; and if then there is any dispute as to any material determinative evidence, or any doubt as to the conclusion to be drawn from the whole

evidence, the motion must be denied. Wildman Mfg. Co. v. Davenport Hosiery Mills, [147 Tenn. 551, 249 S.W. 984] supra; Brenizer v. Nashville, C. & St. L. Ry., 156 Tenn. 479, 3 S.W.2d 1053, 8 S.W.2d 1099; Provident Life and Acc. Ins. Co. v. Prieto, 169 Tenn. 124, 83 S.W. 2d 251; Osborn et al. v. City of Nashville, 182 Tenn. 197, 185 S.W.2d 510; Patillo v. Gambill et ux., 22 Tenn. App. 485, 492, 124 S.W.2d 272, 276; Tennessee Cent. Ry. Co. v. McCowan, Tenn.App., 188 S.W.2d 931.' '' General Motors Corp. v. Dodson, supra, 47 Tenn.App. pp. 444, 445, 338 S.W.2d p. 658. (Citing and quoting from Poole v. First National Bank of Smyrna, 29 Tenn.App. 327, 196 S.W.2d 563)

The evidence of negligence on the part of the defendant is contained in the testimony of the plaintiff, her husband, Lieutenant Bouchard, and another soldier, William H. Belt.

From the testimony of all three of these witnesses the jury could have very well found as a fact that the defendant was driving his automobile without any headlights on, or without proper lighting equipment.

Although there is considerable evidence in the record from which the jury could have also found that the defendant's headlights were on at the time of the accident, that such lights were adequate, and that he was driving at a reasonable rate of speed, keeping a lookout ahead, these conflicts between the evidence presented by plaintiff and the evidence presented by defendant were resolved by the jury in favor of plaintiff's theory, and under our decisions, the verdict having been approved by the trial Judge, we are bound by such verdict.

■ In their arguments in support of the first and second assignments, counsel for defendant insist that the uncontroverted evidence shows that the plaintiff was guilty of proximate contributory negligence, which bars recovery by her, especially since she, as well as her husband, looked in the direction from which defendant's automobile came and failed to see such automobile before the accident.

However, it must also be borne in mind that the plaintiff, her husband, and Belt all three testified that they looked in the direction from which defendant's automobile was coming, there was nothing to obstruct their vision for 300 or 400 yards, and, that they saw no lights.

From this testimony, the jury could have reasonably inferred that the defendant was operating his automobile without headlights turned on or with improper headlights and this would constitute a valid reason for failure of the plaintiff and her husband to see defendant's automobile in the nighttime, as well as constituting evidence from which negligence on the part of defendant could be inferred by the jury.

■ Also in their argument in support of the first and second assignments, counsel for defendant insist that the verdict in favor of plaintiff should not be allowed to stand, because it is inconsistent with the verdict in favor of the defendant and against her husband, Lieutenant Bouchard.

There are some cases, including Berry v. Foster, 199 Tenn. 352, 287 S.W.2d 26 (1956), in which it was held that where a plaintiff-wife seeking general damages recovered and the co-plaintiff-husband, seeking recovery for loss of services and medical expenses sustained be-

cause of injuries to the wife, did not recover, then the verdicts were inconsistent and the verdicts in both the husband's case and the wife's case were set aside. But, in Berry v. Foster, supra, the husband was not personally involved in the accident.

However, this is not the situation which prevails in the instant case, because the wife's right of action is not derived from the husband's right of action, but is independent thereof. So, the rule which applies in a derivative action, such as one instituted by a husband to recover for injuries sustained by his wife, is not applicable here, but just exactly the reverse situation prevails here, since the husband's action for loss of services is derived from the wife's action for damages for injuries sustained by her, but the wife's right of action is not derivative.

In the instant case the jury verdict implies that they found the defendant was negligent and that Mrs. Bouchard was free from proximate contributory negligence which would bar recovery. That being so, it would be contrary to reason and the efficient administration of justice to require a new trial on the question of liability toward the plaintiff in this case.

█ Although counsel for defendant insist that the plaintiff and her husband were in analogous positions to see, hear or observe the approach of defendant's automobile and, failing to see, hear or observe same, both were guilty of proximate contributory negligence, we recognize a difference between the respective opportunities and duties of plaintiff and her husband to become aware of the approach of defendant's automobile. This difference also distinguishes the instant case from the factual situation which existed in Berry v. Foster, supra.

While it is true, that both the passenger and the driver have a duty to exercise ordinary care, the burden which is placed upon the driver is greater in degree than that placed upon the passenger and, especially is this true in the instant case, because the driver was on the side of his automobile toward the direction from which defendant's automobile was approaching and was, therefore, in a better position to see, hear or observe the approach of same.

Apparently, the jury determined that a different degree of care was applicable in the wife's case as distinguished from that applicable in the husband's case.

In the Kentucky case of Donnell v. Pruitt, 265 S.W.2d 784 (1954) which case is cited by defendant's counsel, the Court of Appeals of Kentucky recognized a difference by the following statement:

"We do not intend to imply that the duty of a guest is the same as that of the driver. While the standard of duty is the same, namely to exercise ordinary care, the conduct required to fulfill that duty is ordinarily different because circumstances are different and precautions to be taken by a guest are, in any event, less than those required of a driver. Toppass v. Perkins' Adm'x, 268 Ky. 186, 104 S.W.2d 423." Donnell v. Pruitt, supra, p. 785.

Although, in Donnell v. Pruitt, supra, it was held that the guest who told the driver, in effect, that the intersection was clear, was guilty of such proximate contributory negligence as to bar a recovery by the guest, the factual situation in that case is different from that in the instant case for two reasons: First, in the Donnell case, the guest was seated on the side of the automobile from which on-

coming traffic was approaching; and, second, in the Donnell case there was no question of inadequate lights on either of the vehicles involved in the accident.

The first and second assignments are respectfully overruled.

■ Assignments of error numbered three, four and five must be overruled because the substance of the special requests, refusal of which was made the bases of said assignments, was contained in the following portions of the trial Judge's general charge to the jury:

"Now if both the plaintiffs and defendant were guilty of negligence which proximately concurred in producing the plaintiffs' injuries, the plaintiffs then cannot recover.

Now gentlemen of the jury the proof has shown that Mrs. Bouchard was riding in this automobile with her husband as a passenger. Now in regard to that you will consider the following propositions of law concerning passengers in automobiles, which are, that one riding in an automobile as a passenger or a guest cannot rely on the care and vigilance of the driver of the car to the extent of relieving himself or herself from the exercise of reasonable precautions for her own safety. This obligation is personal and continuing. While ordinarily a guest riding in an automobile and having no control of or direction of either the automobile or the driver has a right to rely on the assumption that the driver will use ordinary care and precaution. Yet if the guest or the passenger sees and knows of a danger or sees a danger that is not obvious to such driver or has superior opportunity to see such a danger, it then becomes the duty of the guest to warn the driver, but the negligence if any, of the driver of

an automobile in which a passenger is riding is not imputable to the guest, but the guest is under an obligation to look out for herself. In other words the negligence of Mr. Bouchard, if any, would not be imputable to his wife, but it was, however, her duty to look out for herself, and furthermore gentlemen it was the duty of Mrs. Bouchard to exercise such care as an ordinarily prudent person would use for her own safety under the same or similar conditions, and the failure on her part to do this, would be negligence, and if such negligence on her part was the proximate cause or proximately contributed to her injuries then she could not recover."

\* \* \* \* \* \*

"Now it was the duty of these plaintiffs to exercise ordinary care for their own safety and if they failed to do so, then they would be guilty of negligence and if such negligence on the part of the plaintiffs was the proximate cause of their injuries or proximately concurred with the negligence of the defendant in producing the plaintiffs' injuries then the plaintiffs cannot recover." (B. of E. pp. 373, 374, 375, 376)

Although in assignment number six, the defendant's counsel do not quote the language used by the trial Judge which they insist placed undue emphasis upon the right of the plaintiff, Mrs. Bouchard, to recover damages, reference is made to pages 390, 391 and 392 of the bill of exceptions, so we quote the following interchange between the trial Jugde and the Foreman of the jury:

"FOREMAN.—If we find both were negligent what do we have to do if they were equally negligent?

JUDGE BOYERS—If you find that both the plaintiffs, now you have got two plaintiffs you know, which one

are you referring to, are you referring to Mr. Bouchard?

FOREMAN—Lets just refer to the two drivers, we will just assume for the object that the two drivers were equally negligent.

JUDGE BOYERS—Well then you would find for the defendant. Now there is a possibility of course that even if you found that, that you could return a verdict in favor of Mrs. Bouchard, if you find that she was not in control of the car and didn't contribute to her husband's negligence.

FOREMAN—If we find them equally negligent we find for the defendant in this case?

JUDGE BOYERS—That is right.

FOREMAN—But we can award her damages?

JUDGE BOYERS—You could that is within your province." (B. of E. p. 390)

We find nothing improper, and certainly nothing prejudicial, in any of the remarks of the trial Judge with reference to the right of the plaintiff, Mrs. Bouchard, to recover and the trial Judge's instructions to the jury in response to questions from the Foreman of the jury were entirely appropriate and represent accurate and correct statements of the law applicable to the case.

Therefore, the sixth assignment is respectfully overruled.

All of the assignments having been considered and overruled, the judgment of the trial Court is affirmed. The costs of this appeal will be taxed against the plaintiff-in-error, Thomas J. Rogers, and the surety on his appeal bond.

Shriver, P.J. (M.S.), and Todd, J., concur.