Richard HARRISON and J. O. Harrison, Petitioners,

v.

Linda K. PITTMAN, Respondent.

Supreme Court of Tennessee.

March 1, 1976.

**312**

Kendred A. White, White & Witt, Madisonville, for petitioners.

Clifford E. Wilson, Kinnard & Wilson, Madisonville, for respondent.

## OPINION

HARBISON, Justice.

This case involves a claim for personal injuries by respondent, Mrs. Linda K. Pittman, arising out of an automobile accident which occurred in Monroe County on July 20, 1972. Mrs. Pittman was a passenger in an automobile owned and driven by her husband. This automobile was proceeding in an easterly direction on Acorn Gap Road at a point where this road intersects a through or arterial roadway, known as Oak Grove Road. The latter road runs generally in a north-south direction.

The accident occurred at approximately 5 a. m., before sunrise, and at a time when all of the witnesses testified that there was complete darkness.

Both of the roadways in question are paved, two-lane county roads. At the southwest corner of their intersection is situated a church, and there is a paved apron adjacent to and along Acorn Gap Road beside and in front of this church. On the northwest side of the intersection there is open area, consisting of an old cemetery. On the southeast corner of the intersection is a newer cemetery, and all four corners of the intersection are open and unobstructed, except possibly for some weeds or summer growth, as testified to by Mr. Pittman. The intersection is level, and a driver of a motor vehicle proceeding on either of the two roadways has an unobstructed view for a considerable distance, probably at least 150 to 200 yards. As one proceeds in a southerly direction along Oak Grove Road, the road descends a slight grade into the intersection, but it is uncontradicted that a driver of a vehicle approaching the intersection on Acorn Gap Road could see at least

150 yards to the north along Oak Grove Road.

Petitioner Richard Harrison was driving his father's automobile in a southerly direction along Oak Grove Road at a speed which he estimated at from 50 to 55 miles per hour. The lights on his automobile were burning, and there were no other vehicles in the area, except the Pittman automobile. Harrison was en route to his place of work, and testified that he was in no particular hurry, and that he was driving at a normal rate of speed. He has no memory of the facts of the accident, and remembers nothing that occurred after he reached a point about 150 yards north of the intersection of Acorn Gap Road. His next recollection is awakening in the hospital some three days later, and there is ample medical evidence in the record that he sustained a head injury and was disoriented for more than two days following the accident.

Mr. and Mrs. Pittman were approaching the intersection from the west, driving east, and both of them testified that the lights on their automobile also were burning. Mr. Pittman said that the stop sign governing traffic on Acorn Gap Road was situated more than 90 feet from the actual intersection, so that he did not stop his automobile at the stop sign, but said that he came on up to the edge of Oak Grove Road. At the trial of this case Mr. Pittman did not at any time state that he actually brought his vehicle to a stop. He did so state in a discovery deposition, and Mrs. Pittman testified that he stopped. Mr. Pittman, however, said that he slowed and looked to his left, and saw nothing coming. He said that his view was partially obstructed by some weeds growing in the northwest corner of the intersection, in the cemetery area, and he proceeded to pull his automobile out into Oak Grove Road and crossed one-half of the road before striking the Harrison automobile in its right front side. There was a terrific impact between the two vehicles, both of which sustained severe damage. The two vehicles proceeded from 35 to 60 feet southerly on Oak Grove Road, and

came to rest with the Harrison vehicle off the Oak Grove Road, on the easterly side, or to the left, insofar as Harrison was concerned. The Pittman automobile was athwart Oak Grove Road, angled against the Harrison vehicle after the accident.

There is no question but that some lights were burning on the Harrison vehicle after the accident. Two witnesses saw them and one of the witnesses testified that he gave instructions to have the lights turned off, because Mr. Harrison's mother, who had come to the scene, was apprehensive that there might be a fire.

Petitioners Harrison sued Mr. Pittman for the personal injuries of Richard Harrison and the property damage of his father. Mr. and Mrs. Pittman each sued the Harrisons for their respective personal injuries, and Mr. Pittman sued for property damage and loss of consortium.

At the conclusion of the evidence in chief in the action brought by the Harrisons, a motion for directed verdict was made on behalf of Mr. Pittman. This motion was overruled. At the conclusion of all of the evidence, this motion was renewed and again overruled. At that time the Harrisons also moved for directed verdict in the actions against them, and these motions were overruled.

The case was put to the jury under proper instructions by the trial judge as to negligence and contributory negligence of all parties, including the passenger, Mrs. Pittman. No exceptions were taken at the time of the instructions, insofar as Mrs. Pittman was concerned.

After deliberating for some time, the jury returned into court and asked for further instructions as to what the effect of negligence on the part of all parties would be. The trial court again instructed the jury, without exceptions from any party, as to the effect of negligence of the drivers and again differentiated the status of a passenger in an automobile.

The jury thereupon returned a verdict in which it found all parties guilty of negligence and dismissed all of the actions.

A motion for new trial was filed on behalf of Mrs. Pittman alleging, among other things, that the verdict was contrary to the evidence, and also alleging that the trial judge was in error in giving instructions as to contributory negligence on her part. She also complained of the failure of the trial judge to give an instruction, requested on behalf of her husband, to the effect that his driving an automobile without a valid operator's license should not be considered as negligence. This assignment will be discussed in a later portion of this opinion.

Insofar as the record before us reveals, no motion for a new trial was made on behalf of Mr. Pittman or on behalf of the Harrisons. In all events, no appeal was perfected on behalf of any of those parties, so that judgment on the jury verdict, finding both drivers guilty of negligence, became final as to them.

It is important to note at this point that no motion for a directed verdict on behalf of Mrs. Pittman was made at the trial, prior to the submission of the issues to the jury. Indeed the record shows that at the conclusion of all of the evidence, counsel for Mr. and Mrs. Pittman stated:

"We submit that the action in favor of the Harrisons should be dismissed and that the jury should be allowed to consider the cases of the Pittmans, in both cases."

The issues were submitted to the jury, and, as stated, the jury resolved them against the Pittmans.

In a divided decision, however, the Court of Appeals reversed the jury verdict in the case of Mrs. Pittman, and in effect granted a directed verdict in her favor. The majority opinion stated that the court could find no material evidence of contributory negligence on the part of Mrs. Pittman, and the case was remanded for a new trial as to her, limited to the issue of damages only. There was a dissenting opinion by one member of the court, who felt that issues of fact were presented, which were appropriate for jury determination.

We granted certiorari, and we are of the opinion that the Court of Appeals was in error, in effect, directing a verdict on behalf of the passenger, Mrs. Pittman. There was conflicting testimony in this record, and differing and conflicting inferences could reasonably be drawn therefrom. Viewed most favorably to Mr. Harrison, as this record must be in considering whether Mrs. Pittman is entitled to a directed verdict in her behalf, the jury could reasonably have concluded that Mr. Harrison was swerving to his left to miss the Pittman automobile which was coming through an intersection on a subordinate highway. There is no question but that Mr. Pittman's car did not strike the Harrison car until Pittman reached the center of the highway. Markings on the highway, testified to by Mr. Harrison's father, indicated that at least some wheel markings were found in the left lane for travel for Richard Harrison, and Harrison's automobile ultimately went off the highway to its left. It is thus clearly inferable that the vehicle on the favored highway was moving to its left, attempting to avoid a collision with an automobile which had either entered the intersection without stopping or, having stopped, was proceeding in violation of the rules of the road governing subordinate highways. The jury could further have inferred from Mr. Pittman's testimony that he was unable to see because of weeds when he reached the intersection of Acorn Gap Road and Oak Grove Road, and that he therefore came on into Oak Grove Road in an effort to see, but that both he and his wife failed to see an automobile which was clearly visible, with its headlights burning, proceeding down the favored highway and moving to its left to avoid striking them. The jury simply did not have to believe the brief testimony of Mrs. Pittman to the effect that her husband stopped, that she looked to her left and to her right and saw

nothing, and that there was no time for her to give an outcry or warning. If Mr. Pittman indeed failed to stop, or if he moved out into the highway in an effort to see better, and if she did indeed look, as she testified, a jury could reasonably conclude that she did have an opportunity to give a warning or outcry before her husband crossed Harrison's right-hand lane and struck him either in the center of the highway or in Harrison's left-hand lane. While, as stated, both vehicles received severe damage in the impact, reasonable men, viewing the pictures, could clearly conclude that it was the Pittman car which struck the Harrison car in its right-hand side. Nearly all of the damage to the Pittman vehicle is in the center and along the front bumper, while the Harrison vehicle was literally caved in at the corner of the right front fender and along the right-hand.side.

In the course of the majority opinion, the Court of Appeals quoted from the case of *Carman v. Huff,* 32 Tenn.App. 687, 227 S.W.2d 780 (1949) (in which a passenger recovered from the driver of the car in which she was riding). Responding to a contention that the driver was entitled to a directed verdict, the Court said:

"To apply the clear holding in that case to this, Mrs. Huff could be held guilty of *proximate contributory negligence as a matter of law* only if it appeared from undisputed evidence that when she became aware, or in the exercise of reasonable diligence should have become aware of Mr. Carman's failure to stop there was yet time to make an effectual protest." 32 Tenn.App. at 696–697, 227 S.W.2d at 784 (emphasis added).

On facts similar to those of the present case, the Court of Appeals held that the issue of the contributory negligence of the passenger was properly left to the jury, and that it would have been improper to direct a verdict for the defendant. The Court said:

"We think reasonable men might differ as to the guest's duties under all the circumstances." 32 Tenn.App. at 698, 227 S.W.2d at 785.

In the present case there was no directed verdict for anyone in the trial court, and all issues were left to the jury under proper and legally correct instructions as to the duties of the various parties.

 It is recognized, of course, that a passenger in an automobile does not have the same duties or obligations as the driver. A passenger, however, is not without responsibility for his or her own safety, and in the present case Mrs. Pittman testified that she did look in both directions before the impact. As stated, her husband crossed at least one lane of travel of the favored highway before running into the side of a vehicle which was swerving to its left to miss him, or at least a jury could reasonably so conclude, and during the time when he was stopped and during the time when he was moving out into the highway she said nothing and apparently took no precautions whatever to warn him of a danger which was both imminent and obvious. Despite the fact that the jury found Richard Harrison guilty of negligence, in our opinion there was a jury issue as to whether Mrs. Pittman was or was not also guilty of negligence. We think that a directed verdict for any of the parties in the action would have been improper. As previously stated, no motion for directed verdict was ever made on behalf of Mrs. Pittman. The request of her counsel that her case be put to the jury was granted by the trial court.

We accordingly reverse the judgment of the Court of Appeals and hold that it was in error in remanding the case for a new trial as to Mrs. Pittman, limited to issues of damages only, this being in effect a directed verdict in her favor on the issue of liability.

 Inasmuch as the majority opinion in the Court of Appeals did grant a reversal on a single assignment of Mrs. Pittman, to the effect that the trial judge erred in submitting the issue of her contributory negligence to the jury, the Court of Appeals

pretermitted her remaining assignments of error. Although not technically complying with the requirements of T.C.A. § 27–823, by separately assigning error in this Court after we granted the petition of the Harrisons, counsel for Mrs. Pittman have nevertheless stated in their reply brief that they did not intend to waive their remaining assignments of error, pretermitted by the Court of Appeals, and have urged consideration of them here. We deem this a sufficient compliance with T.C.A. § 27–823 to enable us to examine and consider these assignments.

One of these was that the trial judge refused to give an instruction that the jury not consider as evidence of negligence the failure of Mr. Pittman to have a driver's license. It is stated by counsel that mention of this fact was made in final arguments to the jury. These arguments, however, are not preserved in the bill of exceptions, and we have no way of considering them or of determining whether objectionable comment was or was not made. Evidence that Mr. Pittman's license had previously been revoked came into the record without objection and without any subsequent motion to strike. There is no evidence as to whether Mrs. Pittman did or did not know about the revoked license.

The tendered instruction, which was declined by the trial judge, was not upon the issue of contributory negligence of Mrs. Pittman. It was apparently made in Mr. Pittman's case. The instruction was:

> "Comes Edgar Pittman by and through his attorney and moves that the Court instruct the jury that his failure to have a driver's license is no evidence of negligence in this case and should not be considered by the jury."

The trial judge carefully instructed the jury that any negligence of Mr. Pittman was not imputable to his wife, and that the jury should consider her case separate and apart from that of her husband. He then correctly and fully instructed the jury as to the duties of a passenger riding in an auto-

mobile. Under these circumstances, the failure of the trial judge to give the tendered instruction, in our opinion, was not error, insofar as Mrs. Pittman was concerned.

All of the other assignments of error on behalf of Mrs. Pittman dealt with the preponderance of evidence or with her claim that the trial judge should have directed a verdict in her favor and entered judgment thereon after the jury verdict. There is no indication that the trial judge failed in his duties as thirteenth juror. He apparently concluded that the verdict of the jury was not contrary to the preponderance of the evidence and concurred therein. On appeal any issue as to the preponderance of evidence in a jury case such as this is foreclosed. As to the other assignments, we have already indicated that we do not consider this·a proper case for a directed verdict in favor of Mrs. Pittman.

It accordingly results that the judgment of the Court of Appeals in this case is reversed and the judgment of the trial court, dismissing the suit, is reinstated. All costs on appeal are taxed to respondent.

FONES, C. J., BROCK, J., and HYDER, Special Justice, concur.

HENRY, J., dissents.

HENRY, Justice (dissenting).

I respectfully dissent.

Linda K. Pittman was what we quaintly call a "guest passenger" riding in an automobile operated by her husband.

It is my understanding of the law that a guest riding in an automobile is not required to use the same care and diligence as the operator but is required to use only that degree of care that an ordinarily prudent person would have observed under the same or similar circumstances, *Talley v. Dalton,* 10 Tenn.App. 597 (1928); that the law imposes a substantially higher burden upon the driver than is placed upon the passenger, *Rogers v. Bouchard,* 60 Tenn.App. 555,

449 S.W.2d 431 (1970); that a guest has the right to assume that the driver will exercise proper care and caution until he has notice to the contrary, *Chickasaw Wood Products Co. v. Lane,* 22 Tenn.App. 596, 125 S.W.2d 164 (1938), and where no previous conduct or events occur to alert the guest to the danger, *Smith v. Bullington,* 499 S.W.2d 649 (Tenn.Ct.App.1973); and, of course, it is fundamental to our law that the negligence of the driver is not imputed to the passenger.

The majority opinion quotes from *Carman v. Huff,* 32 Tenn.App. 687, 227 S.W.2d 780 (1949) holding that a passenger could be guilty of contributory negligence as a matter of law only if it appears that she knew or should have known of the danger and there was time to make an effective protest. The next sentence reads as follows:

> Until that time she could rely upon the assumption that the driver of the automobile would exercise proper care and caution, the danger not being obvious or known. 227 S.W.2d 784.

When we apply these legal principles to the facts of this case I find no escape from the conclusion that, as a matter of law, the guest was not guilty of contributory negligence.

It is obvious that the jury, after finding both drivers guilty of negligence, visited upon the passenger, Mrs. Pittman, the negligence of her husband. The majority opinion, in my view, falls into the same error.

A clear case of negligence is made out against the driver and an effort is made to show that Mrs. Pittman was also guilty of negligence. But even my esteemed colleague, Justice Harbison, with his recognized ability to marshall facts and present them with clarity, was unable to document negligence upon her part.

The opinion charges her with negligence in failing to see the Harrison automobile, and in failing to make outcry. I find this to be of no significance.

The undisputed proof shows that the driver stopped at the intersection.[1] Whether he did or not, however, is of no significance to the passenger's suit.

Let us assume that he did not stop. The record shows he was approaching an intersection, and there is absolutely nothing in the record to suggest any conduct on his part which would have caused her to believe that he would not come to a stop. Most assuredly, a wife, riding in an automobile with her husband, is not required to say to her husband, "You are approaching an intersection, you be sure to stop." If this were required, a cross-town trip would be a nightmare; and many marriages—if not wives—would become casualties of an unreasonable construction of the duty to warn.

Let us assume that he did stop at the intersection, surely the wife is not required to say, "Now, honey, you stay stopped." The law does not require that wives be "back-seat drivers" to the extent of becoming stop sign naggers.

There is absolutely nothing in this record to put her on notice. Had she seen the approaching automobile, she had the right to assume that her husband would not pull out into its pathway.

But let us assume that, for some undisclosed reason, she should have been on notice. The law requires time for an effective protest. I assume a driver would accelerate from a dead stop at a rate of 10 to 15 miles per hour. At 10 miles per hour a vehicle moves 14.66 feet in one second; at 15 it moves 22 feet in one second. The driver's reaction time is approximately three fourths of one second.[2] Had the wife real-

---

1. She testified positively that he stopped; his testimony by inference, is to the same effect. There was not a shred of evidence to the contrary.

2. The driver's reaction or "thinking" distance is ordinarily about a car length or 15 feet at 20 miles per hour. See Tennessee Driver's Manual. At 10 miles per hour dur-

ized that her husband would not "stay stopped" and warned him the very instant he started to move, allowing no reaction time on his part, he would not have had time to even apply his brakes. Again, she simply did not have time to make an effective protest.

To validate the majority opinion, we must infer (1) that the driver was guilty of some undisclosed act of negligence in advance of either running the stop sign or not staying stopped, (2) that the passenger knew or should have known of this unknowable danger, and (4) that she had time to protest against the danger.

It is only after pyramiding these unsupported inferences that contributory negligence on the part of Mrs. Pittman can be established. I am unwilling to assume that she knew of the existence of any danger and that she knew or should have known that her husband would drive into the pathway of an oncoming car and that there was reason or opportunity for effective protest.

In my view the Court of Appeals reached the correct conclusion and I would affirm.

ing the reaction time an automobile would travel approximately 11 feet; at 15 approximately 16½ feet. Either distance would terminate at or near the point of impact.